## HOUSTON TRANSP. CO. et al. v. SAN JACINTO RICE CO. et al.

(Court of Civil Appeals of Texas. El Paso. Jan. 29, 1914. Rehearing Denied Feb. 26, 1914.)

1. PARTIES (§ 40*)—INTERVENTION—RIGHT.

In a suit to restrain defendants from removing sand bars from a fresh-water stream upon which plaintiff's land abutted, and from which fresh water for irrigation purposes was taken, an adjoining landowner, who lived near plaintiff's property, may intervene as a party plaintiff; it being to his interest to prevent the removal of the sand bar which obstructed the flow of salt water.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 60–63, 65–67; Dec. Dig. § 40.*]

2. APPEAL AND ERROR (§ 548*)—NECESSITY.

An assignment of error complaining of the rejection of evidence cannot be reviewed on appeal, where the evidence was not preserved by a proper bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. § 548.*]

3. NAVIGABLE WATERS (§ 40*)—POLLUTION—RIGHT OF RIPARIAN OWNER.

Riparian rights are property which will be protected by the courts, and a riparian proprietor, entitled to the flow of a stream of pure and wholesome water, may enjoin the threatened pollution of the stream, where the threatened

invasion will be of long continuance, and the injurious results contingent and of doubtful extent.

[Ed. Note.—For other cases. see Navigable Waters, Cent. Dig. § 245; Dec. Dig. § 40.*]

4. NAVIGABLE WATERS (§ 40*) — RIPARIAN OWNERS—RIGHTS OF RIPARIAN OWNERS.

While the owner of the shore of a navigable stream has no ownership in the water, he has the right to divert its waters for domestic purposes and irrigation, so long as it does not interfere with the rights of the public.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 245; Dec. Dig. § 40.*]

5. NAVIGABLE WATERS (§ 40*)—RIGHTS OF RIPARIAN PROPRIETORS.

Where a sand bar in a navigable stream prevented the influx of salt water from the gulf into which it emptied, and thus rendered the stream of value to riparian owners for the purposes of stock raising and irrigation, private persons who desired to remove the sand bar will be enjoined, for a riparian owner has a property right, and the fact that the sand is peculiarly suitable for building purposes in a nearby city will not authorize the destruction of the riparian owner's property.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 245; Dec. Dig. § 40.*]

6. NAVIGABLE WATERS (§ 42*)—PRESCRIPTIVE TITLE.

Plaintiffs' were riparian owners on a navigable stream, the waters of which were kept fresh by a sand bar, which prevented the influx of salt water at high tide from the gulf into which the stream emptied. For more than ten years defendants had been taking sand from the bars located in the stream; but, up to the time plaintiffs filed their suit for injunction, the removal of the bars had not threatened plaintiffs' protection against salt water. Held, that defendants acquired no prescriptive rights as against plaintiffs.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 253–255; Dec. Dig. § 42.*]

7. APPEAL AND ERROR (§ 216*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

Where no special charge was requested, a party cannot complain that the court refused to submit an issue to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

Error to District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the San Jacinto Rice Company against the Houston Transportation Company and others, in which J. R. Farmer and wife intervened. There was a judgment for the interveners, and defendants bring error. Affirmed.

Baker, Botts, Parker & Garwood, Taliaferro & Taliaferro, John G. Tod, and A. R. & W. P. Hamblen, all of Houston, for plaintiffs in error. Campbell, Sonfield, Sewall & Myer, of Houston, and Smith, Crawford & Sonfield, of Beaumont, for defendants in error.

HARPER, C. J. The plaintiff, San Jacinto Rice Company, instituted this suit in the district court of Harris county, Tex., in October, 1911, naming the following defendants: Houston Transportation Company, Buffalo Bayou Company, Galveston, Harrisburg & Houston Transportation Company, and Fayette Jones.

Plaintiff alleged, in substance, that it was a riparian owner of lands on both sides of the San Jacinto river, in Harris county, Tex., and about six miles from the mouth of that river; that said river was a navigable stream; that it was engaged in raising rice, and had installed, at great expense, pumping plants, canals, and laterals necessary for that industry; that for the purpose of irrigation fresh waters were absolutely indispensable; and that salt water would ruin the crops to be irrigated, and destroy their irrigating plants. Plaintiff alleged that there are certain bars in San Jacinto river, naming and describing them, located several miles below their pumping plant, which were an impediment to the influx of salt water; that the last of these bars toward the sea was a certain Diamond Island bar, several miles in length, and reaching entirely across the river, and that this bar was absolutely essential to the protection of plaintiff's plants from the influx of salt water; that the defendants were engaged in dredging building sand from Diamond Island bar, and hauling it to Houston for market; that, if this bar were removed, salt water would be permitted to ascend the river, doing plaintiff irreparable damage.

A temporary injunction was granted, and there was a trial before the court without a jury in December, 1911, and January, 1912, at the termination of which trial the court dissolved the injunction, in so far as Diamond Island bar was concerned. Subsequently, at the same term of court, a new trial was granted, however, and a second trial was had before a jury on and following the 29th of April, 1912. On that date J. R. Farmer and wife, owning land on the east side of the San Jacinto River adjacent to Diamond Island bar, intervened, adopting substantially the allegations in plaintiff's petition, and alleging, in substance, that interveners owned about 800 acres of land contiguous to and lying upon the river, which are used for grazing purposes, farming, and agriculture, and that for these purposes they used the waters of the San Jacinto river; that the removal of Diamond Island bar would allow salt water to ascend the river, and impair the quality of the fresh water in the river to such an extent that it would deprive it of its use for domestic purposes, stock raising, and agriculture; and that they would thus be done serious irreparable injury.

The defendant answered, in substance, after general demurrer and general denial: That the removal of these bars would not have the damaging effect alleged. That, as sand was removed, silt and other deposits would rapidly fill its place. That the sand in the San Jacinto river was of the very finest quality for use in concrete construction

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and general building purposes. That the use of building sand of the character taken from the river and brought on barges to the Houston market was absolutely essential for the benefit of the public, and for the benefit of the people of Houston and Harris county, for building purposes. That Houston is a city of approximately 100,000 people, and the people of Houston are engaged actively in building a great many houses, office buildings, and various character of concrete structures, including walks, street curbing, and other cement structures, and in all such construction work, which involves an expenditure of more than $1,000,000 annually, approximately, San Jacinto river sand is constantly used, and is absolutely necessary. That, in order to make the necessary concrete constructions, it is essential and indispensable to have clean, sharp sand, free from foreign elements, and the only place that this sand can be had for use in Houston and vicinity, and brought to market at prices which will enable consumers to purchase and use it, is the sand from the Diamond Island bar, and that it has for years heretofore been taken from that vicinity. That the plaintiff herein purchased the wild lands owned by them, and which they were undertaking to raise rice upon, with full knowledge of the condition of the river alleged by them, or at least it was their duty to have investigated these facts before investing the large sums of money they claim to have placed in this property. That the bars in the river referred to were not the natural bed of the river, but were obstructions placed there, deposits in the river impeding navigation, distorting the channel of the river, and otherwise hindering its proper use, and plaintiff purchased the property, and undertook to develop it, with knowledge of the facts as outlined, or at least it was charged with that knowledge as a matter of law, and with a knowledge of the use to which this sand was put by the building public, and it would be inexcusable to allow them now, for their own private advantage, to stop the taking and marketing of this product, and it would work irreparable and untold injury to the public, as well as the defendants, who had invested large sums of money in equipment, barges, boats, and other means of transportation, for the purpose of taking and transporting this sand to market, and their equipment would be a total loss to them if they were deprived of this privilege, and the public at large and inhabitants of Houston and Harris county would suffer irreparable injury if it were stopped, and if they were deprived of this building material. That the defendants and the people of Houston and Harris county have for more than 5 years, and more than 10 years, and more than 20 years, and for a long period of time, exercised the privilege of taking this sand from the river and bayou, and hauling it to Houston for use and for market. That during all that time the fee to the bed of the river and bay has been owned by the state of Texas. That neither the defendants nor other persons who have before it exercised a like privilege of taking and hauling this sand have ever been molested or hindered by the state or by the plaintiff or any one else in the exercise of that privilege. That the long-continued use, and enjoyment, and exercise of this privilege by the public for the periods of years aforesaid has been open, notorious, and uninterrupted, and has been such as, in law, to amount to an easement of right or privilege, and to conclusively establish the presumption of a grant of this right or privilege from the sovereignty, and defendants plead this easement by way of limitation, and as a presumed grant against the plaintiff's right of action. That defendants proceeded in this matter under a permit issued by the proper authorities of the state of Texas authorizing the removal of this sand. That the state of Texas is the owner of the fee to the bed of the San Jacinto river. That as such the state has the right, and it is its duty, to sell and dispose of this sand and other material in the bed of the river to persons wishing to buy the rights of the state; it merely being the duty of the state to see that in the removal of same the beds of oysters and the fishing grounds are not destroyed or injured, or that navigation is not hindered, or the channel of the river impeded, for the purposes of navigation. That this defendant is not a trespasser, but is lawfully exercising this right, not only under authority from the state of Texas, but by virtue of a permit granted to it by the Department of War of the government of the United States, customary in the case of removing materials from the bed of navigable waters; and that the plaintiff in this cause purchased this property, and undertook to develop its rice field, with full knowledge of the state and federal governments' rights in the premises, and with full knowledge of the easement the public has acquired in these matters, as averred in the last preceding paragraph, and subject and subordinate to the rights of the state and federal governments to grant permits for the removal of this sand, and of the state and federal governments to dredge and straighten its channel, or improve it for the purposes of navigation, and therefore cannot complain that these bars, which were an impediment to navigation, are being removed from the river by either of these governments, or by persons acting with the permission of one or both of said governments.

Upon the second trial, the court submitted the case in the form of special issues to the jury; the issues submitted and the answers being as follows:

"Special issue No. 1: Do you believe from a preponderance of the evidence that, if Diamond Island bar is removed from the San Jacinto river, it is reasonably probable that salt water will, under ordinary and usual

conditions of tides in and weather on said streams, at the different seasons of the year, be permitted to ascend in greater quantities or more frequently than it now ascends said river with said bar in the same, to the land of the interveners situated between Bear Bayou and Diamond Island bars, and to such an extent as to cause interveners material injury to the use of said water for irrigation, domestic, or stock-raising purposes, if Diamond Island bar is permitted to remain in said river? For your answer to this question, you will say, 'Yes,' or 'No,' as you find the facts to be."

"Special issue No. 2: Do you believe from a preponderance of the evidence that it is reasonably probable that, if Diamond Island bar is removed from the San Jacinto river, that salt water, under the ordinary and usual conditions of tides existing in and weather on said stream at the different seasons of the year, will be thereby permitted to ascend said stream to that part of the lands of interveners fronting on said river above Bear Bayou bar, when the salt water would not probably, under the same conditions, ascend said stream to said interveners' land, if said bar was not removed, and that said salt water so ascending would in reasonable probability pollute the waters of said stream opposite that part of interveners' land above Bear Bayou bar to such an extent as to materially injure the interveners in the use of said water for irrigation, domestic, or stock-raising purposes? For your answer to this question, you will answer, 'Yes,' or 'No,' as you find the facts to be."

"Special issue No. 3: Do you believe from a preponderance of the evidence that there exists a reasonable probability that, if Diamond Island bar is removed from the San Jacinto river, salt water will be thereby permitted to ascend said stream to the land of the plaintiff fronting on said stream, under the ordinary and usual conditions of tides existing in and weather on said stream at the different seasons of the year, when salt water would probably not, under the same conditions, ascend said stream to said point if said Diamond Island bar is not removed, and that said salt water so ascending would in reasonable probability pollute the waters of said stream opposite plaintiff's land to such an extent as to materially injure plaintiff in the use of said water for irrigation or domestic purposes? For your answer to this question, you will say, 'Yes,' or 'No,' as you find the facts to be."

Answer to special issue No. 1: Yes.

Answer to special issue No. 2: No.

Answer to special issue No. 3: No.

Upon these answers the court rendered judgment against the San Jacinto Rice Company, dissolving the injunction that had theretofore been granted, but granted a permanent injunction in favor of the interveners, J. R. Farmer and wife. From this judg-ment, the plaintiffs in error, defendants below, have prosecuted this writ of error.

[1] The first assignment charges that the court erred in overruling the plea of misjoinder, interposed on behalf of all the defendants against the petition of the interveners, J. R. Farmer and wife, because their pleading did not show any right on their part to prosecute this action jointly with the San Jacinto Rice Company, because not being a proceeding in which it is contemplated an intervention could be filed, since the injunction was granted the San Jacinto Rice Company under a bond given by that company in December, 1911 and it having continued in force from that time on the prayer of said company, and under the bonds given by it, the interveners not having given bond, nor having been properly made parties to any of the aforesaid pleadings; the proposition being that the land of interveners is situated several miles below that of the original plaintiff, and not owned in common, and, if interveners had any cause of action because of the threatened invasion of their rights, it was one they should have asserted in an independent suit, and not one which they can maintain by intervention in this suit.

The rule is that, to confer upon J. R. Farmer and wife the right to intervene in this suit, they must have such an interest in the subject-matter of the litigation as makes it necessary or proper for them to come into the case for the preservation of that right. The land of the interveners and that of the original plaintiff immediately adjoin, and are upon the San Jacinto river, and each has the same rights to have the waters flow, and to prevent pollution; they have a common complaint against the defendants for an injury of the same kind inflicted by the same acts. There can be no reason why they should not be allowed in this suit to adjudicate all the matters growing out of the alleged wrongful acts of which complaint is made, and against which the injunction is sought.

[2] The second assignment of error cannot be considered, because it complains of the ruling of the trial court upon the rejection of certain evidence, and there is no bill of exceptions approved and filed as required by the rules. Smyer v. Ft. Worth & Denver City Ry. Co., 154 S. W. 336, and cases there cited.

(a) Under the various assignments, the appellants assert the right to remove the bar by reason of the statute of ten-year limitation; (b) that plaintiffs showed no right to the injunction prayed for, because they (plaintiffs) have shown no right to the use of the waters for any of the purposes claimed by them, irrigation, etc., because the control of the waters has never passed from the state of Texas; (c) because the evidence showed that the water was salty above the bar proposed to be removed under ordinary conditions with the bar intact, and that the court erred in refusing a special charge submitting the

question to the jury; (d) because the evidence showed that the bar, if removed, would re-form, and that the court erred in not submitting this question to the jury; (e) because no evidence of such use of the land for rice culture and domestic use as would justify injunction; and (f) because plaintiffs did not show that they would be materially and irreparably injured.

It is practically undisputed: That the plaintiffs are the owners in fee simple of the lands described in the petition, being about 800 acres of land fronting about 4½ miles upon the San Jacinto river, all on the water shed and drain into the river. Interveners live upon the land, which is fitted for rice culture, etc., and that, if the land is used for such purposes, it is necessary at certain seasons of the year to pump fresh water upon said lands. That only fresh water is suitable, and salt water injurious. That interveners are raising stock, and the river is their source of water supply for such stock, and that pure water, free from salt, is necessary therefor. The said San Jacinto river and Buffalo bayou merge at Lynchburg, and together form a stream commonly called the San Jacinto river, and from there to Morgan's Point, at which point the body of water so formed is called San Jacinto Bay, and said bay joins at Morgan's Point with what is known as Trinity or Galveston Bay, which said bay joins the Gulf of Mexico. San Jacinto Bay, Galveston or Trinity Bay, and the Gulf of Mexico are bodies of salt or sea water wholly unfit for irrigation purposes, or for domestic or natural uses and stock-raising purposes, and are destructive of all kinds of crops, especially for rice crops, and injures the land when placed thereon for irrigation purposes. The San Jacinto river is affected by the tides of said bays and gulf for a distance of about 20 miles above Lynchburg, and about 6 miles above interveners' land. That in the said San Jacinto river, at a point opposite and in front of interveners' lands, and above Lynchburg, where said river merges with said Buffalo bayou, are and always have been located two sand bars or elevations in the bottom or bed of said stream, naturally deposited and existing, and composed mainly of sand. That the first one of said bars opposite interveners' lands is known as Bear Bayou bar; the second of said bars opposite interveners' said lands is known as Diamond Island bar. The natural result and effect of said bars in said river is to form a complete barrier, and protect the river above same and opposite the lands of the interveners from the influx of salt and sea water, especially during high or flood tides, which occur at frequent intervals during the pumping or irrigation season. That, with the existence of said sand bars in said river in their natural condition, the waters of said stream above same and opposite interveners' lands are and have been thereby kept fresh and free from salt and other

minerals, making it adaptable to irrigation and for natural and domestic uses and stock-raising. That the salt or sea water is heavier than fresh water, and flows to the bottom or bed of the stream, and, when same comes in contact with said sand bars, is prevented from going further up said streams except in small quantities when unusual storms occur. That prior to the time that defendants began to dredge sand out of the San Jacinto river there existed in said river another or third sand bar, lying between Diamond Island bar and the town of Lynchburg, known as the Jack Norton bar, which bar the defendants have entirely removed, and, in consequence and as the direct result of such removal, salt water at every flood tide is projected up said stream to the lower end of Diamond Island bar in a manner and to an extent that never occurred prior to the removal of the Jack Norton bar. That defendants were then engaged with large tugs and dredge boats in removing sand from the lower end of the Diamond Island bar, and are fast removing the said Diamond Island bar, and intend to and are now proceeding to continue the dredging operation until all of the said Diamond Island bar is removed, and also intend to dredge and remove all the sand from the said Bear Bayou bar, and are now prosecuting the work, and have stated their intention to continue their operations until both the Diamond Island bar and Bear Bayou bar are removed.

The jury found: That, if the defendants remove the said Diamond Island bar and Bear Bayou bar, or either of them, the necessary and certain result thereof will be to cause and permit salt water to be discharged into San Jacinto river above the point where said bars are now located and opposite interveners' land and above same, and thereby pollute the fresh waters of the stream, and render the same unfit for purposes of irrigation, stock raising, and natural and domestic uses. That the lands of interveners without a supply of fresh water are of small value, but the said lands in connection with the riparian rights incident thereto are of great value, and such riparian rights constitute a material part of the value of their lands, and, if defendants are permitted to remove the said bars, or either of them, interveners and their tenants will be irreparably injured and damaged in that the riparian rights, as above described, will be thereby destroyed and rendered worthless, and the greater part of the value of said lands, as dependent upon such riparian rights, will be destroyed, and interveners would be forced to abandon said land as their home, because of inability to use said waters for drinking purposes, watering stock, and for other natural and domestic purposes.

[3] Riparian rights are property, which will be protected by the courts. And to a riparian proprietor, whose right to the use

and enjoyment of the flow of a stream of pure and wholesome water free from pollution has been actually, or is about to be, invaded, injunctive relief will be granted, where such invasion, or threatened invasion, will be continuing, and the extent of the injurious consequences is contingent and of doubtful pecuniary extent.

[4] It is true that the owner of the shore of a navigable stream has no ownership in the water and no greater right than any other person as between himself and the commonwealth; but he has the right to the use as a public highway, and may divert its waters for domestic purposes, and, to the extent of not interfering with the rights of the public to navigate, may divert the waters for irrigation. Mills v. U. S. (D. C.) 46 Fed. 738, 12 L. R. A. 678, and cases there cited.

[5] If the state or the United States were removing the bar for the benefit of navigation, and this controversy arose between such appellees herein, the appellants' contention that the state had the fee and all rights to control or remove, etc., might be well taken, but then, in most cases, subject to remuneration to owner of land if land be taken or destroyed. But the necessities of one man or any number of men cannot justify an injury to or the destruction of another's property, without his consent and without remuneration, so, if it be true, as alleged by appellants, that if this injunction be perpetuated the people of the city of Houston will be compelled to pay more for sand in building up their city, on the other hand, it is equally true, according to the finding of the jury, that if the appellants are permitted to remove the bar in question that appellee's land will be rendered materially less valuable and possibly, utterly worthless.

[6] But plaintiff also claims it has acquired by prescription the right to take the sand and to thereby remove the bar. As to the taking of sand the right might be acquired by prescription, and, if the bar had been removed, and appellee's lands had been effected by the flood waters for ten years, the prescription right would have been acquired, for in that case there would have been a wrong which the appellees could have redressed by suit, and, from their delay in suing, the presumption of a grant would have arisen, but not so in this case. The appellees had no property rights in the sand, and any taking thereof by the appellants up to the time that it amounted to a removal of the bar to the extent that it permitted the salt water to flow up to appellees' land, to its injury, inflicted no wrong upon appellees. Being not inimical to their rights, it raised no presumption against them, so appellees could not have prevented or interrupted the taking of sand by appellants by any legal proceedings until in some way such act of taking threatened to or actually worked injury to their property rights. Irrigation Company v. Vivian, 74 Tex. 171, 11 S. W. 1078.

The position of appellees' land upon the stream gives them the right to the use of the waters thereof to the extent above indicated, and it being undisputed that they now live upon the land, and use the waters for domestic purposes for stock, etc., is sufficient to authorize them to invoke the processes of the courts in preventing appellants from doing anything which would result in the pollution of the waters of the stream to their injury; and the fact that the bar would, in time, by reason of the action of the flood waters in the river against the tidewaters from the gulf, re-form could be no reason why the appellees should not have the relief prayed for, for the time intervening between the time of removal and the time it should re-form.

[7] The appellants' fifth assignment cannot be considered, because it complains that the court refused to submit an issue to the jury, and the record does not disclose that any special charge was offered and requested to be given.

Believing that all the material questions proposed in appellants' brief have been disposed of by the discussion above, the assignments are overruled without mentioning each specifically, and the judgment of the lower court is affirmed.