DALLAS COUNTY FLOOD CONTROL DISTRICT ET AL v.
C. C. BENSON ET AL

No. A-6358. Decided October 23, 1957.
Rehearing overruled November 20, 1957.
(306 S.W. 2d Series 350.)

*R. G. Scurry, Scurry, Scurry, Pace & Wood,* for Dallas County Floodd Control District; *Thompson, Knight, Wright & Simmonds, Richard E. Gray,* and *David M. Kendall, Jr.,* for Dallas County Levee Improvement District, *Bowyer, Thomas, Crozier & Harris,* for City and County of Dallas Levee Improvement District, all of Dallas, for petitioners.

*Roland Boyd* and *Edward J. Veigel,* both of McKinney, for respondents.

MR. JUSTICE SMITH delivered the opinion of the Court.

Respondents brought this suit against the petitioners, their Directors, Supervisors, and Managers, for damages to crops on

land in Dallas County, Texas. The damages were alleged to have occurred as the result of spraying operations undertaken by the petitioner, Dallas County Flood Control District, for the purpose of clearing the floodway between the levees of City and County of Dallas Levee Improvement District and Dallas County Levee Improvement District No. 5. For convenience, the petitioners will hereafter be designated as defendants, and the respondents as plaintiffs. Defendants filed separate motions for summary judgment. The trial court granted all the motions of the defendants and the Court of Civil Appeals has affirmed such action as to all individual defendants, but reversed and remanded the cause for trial as between the plaintiffs and defendant-districts. The plaintiffs have not applied for writ of error, hence the judgment of the Court of Civil Appeals as affecting the individual defendants has become final. We are concerned only with the question of whether or not the summary judgment was proper as it affects the cause of action plead by the plaintiffs against the defendant-districts.

Plaintiffs' petition in the trial court presented two theories of recovery, either of which, according to their contention, would present fact issues rendering necessary a trial by the trier of the facts. The plaintiffs in oral argument admitted abandonment of the right of recovery on the theory that the damage complained of was the direct and proximate result of the negligence of the defendants, leaving for our consideration the remaining theory.

The Court of Civil Appeals has sustained this theory which, in substance, is that the damage to the cotton crops of plaintiffs constituted the taking or damaging of their property for a public use within the meaning of Article I, Section 17, of the Constitution, which prohibits the taking, damaging, or destroying of one's property for public use without payment of adequate compensation therefor.

The defendants contend that the damage resulting from the spraying operations was not necessarily a consequential result of the act of clearing weeds and willows from the floodway, and did not constitute the taking or damaging of property within the meaning of Article I, Section 17, supra.

We hold that the question thus presented has been definitely settled in favor of the defendants in the case of Texas Highway Department v. Weber, 147 Texas 628; 219 S.W. 2d 70. In that

case the State of Texas was the defenfdant. In the case at bar, the districts involved are each a governmental agency of the state, and in taking action for the purpose of cleaning the floodway of weeds and willows, each was performing a governmental function. Bennett v. Brown County Water Improvement District, 153 Texas 599, 272 S.W. 2d 498. In the Weber case, supra, the employees of the Texas Highway Department, while engaged in the maintenance of the highway, burned the grass along its shoulders, and the fire spread to the hay crop growing on land adjacent to the highway, thereby destroying a substantial portion of Weber's hay. This Court denied recovery holding that:

"Under the facts of this case, the cause of action is simply one sounding in tort. The Highway Department employees were engaged in the maintenance of the highway at the time they set the fire that caused the damage to respondent's hay crop. They were engaged in the discharge of a mandatory, governmental duty. There was no authorization or necessity for them to cause damage to adjoining property by reason of burning the grass on the shoulders of the highway. *The damage occasioned by the fire was not necessarily an incident to, or necessarily a consequential result of, the act of the employees in clearing the grass from the highway. The spreading of the fire onto the premises of Weber was purely and solely the result of negligence; in no conceivable way can it be said that the hay crop was taken or damaged for public use.* To hold otherwise would be, in effect, to establish a principle of law that the State is responsible for all injuries or damages occasioned by its agents in the negligent performance of their official duties. It is true, and unfortunately so, that respondent has suffered damage to his property. One's normal reaction is that he could be compensated therefor. On the other hand, the doctrine of the nonsuability of the State is grounded upon sound public policy. If the State were suable and liable for every tortious act of its agents, servants, and employees committed in the performance of their official duties, there would result a serious impairment of the public service and the necessary administrative functions of government would be hampered." (Emphasis added).

The Weber case, supra, was decided by this Court in 1949, and we see no sound reason why we should not apply the principles of law there announced to the facts in the instant case. In the case at bar the employees were attempting to kill weeds and willows in the floodway. There was no authorization or necessity for them to cause damage to the cotton crops approxi-

mately three miles from the floodway by spraying the 2,4-D in the floodway. The drifting of the 2,4-D to plaintiffs' crops was the result of negligence or accident, and certainly in no sense can it be said that such an unfortunate fact constitutes a taking for public use within the meaning of Article I, Section 17, of the Constitution. This identical question has recently been before the Supreme Court of Arkansas and was decided adversely to plaintiffs' contention. See St. Francis Drainage District v. Austin, _____ Ark. _____ , 296 S.W. 2d 668.

Since we are of the view that the Weber case, supra, is controlling, it would serve no good purupose to enter into an analysis of the cases of State v. Hale, 136 Texas 39, 146 S.W. 2d 731, and Hidalgo County Water Improvement District No. 2 v. Holderbaum, Texas Com. App., 11 S.W. 2d 506. The arguments advanced by plaintiffs as to the effect of the holdings in these two cases are not sufficiently persuasive to alter our view heretofore expressed in the Weber case, supra.

The holding on the question above discussed is decisive and controlling and compels a judgment in favor of the defendants without the necessity of deciding the other points presented in the three applications for writs of error.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered October 23, 1957.

Rehearing overruled November 20, 1957.