**Andrea Marie DELANEY, Appellant,**

v.

**The UNIVERSITY OF HOUSTON, Appellee.**

**No. C14–88–1044–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 26, 1990.

Rehearing Denied June 14, 1990.

A. Glenn Diddel, III, Houston, for appellant.

Martha H. Allan, Norberto Flores, Austin, for appellee.

Before CANNON, DRAUGHN and ELLIS, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a summary judgment. During the 1983–84 school year, appellant Andrea Marie Delaney attended the University of Houston on an athletic scholarship to play volleyball. The scholarship provided for her educational, housing and meal expenses, and Ms. Delaney was housed in Settegast Dormitory, an on-campus facility. Prior to the Easter recess, Ms. Delaney contacted the dormitory management several times to report that an exterior door was being propped open to allow access because a key was broken off in the lock. However, the door was not repaired. Ms. Delaney remained at the University during Easter recess due to compulsory volleyball practice. On the night of March 12, 1984, a man entered the propped-open door, found his way to Ms. Delaney's room and raped her at gunpoint.

Ms. Delaney sued the University for breach of contract and tort damages. The University filed a motion for summary judgment stating that her claims were barred by the Texas Tort Claims Act. The trial court granted the University's motion, stating that all of the claims, including those for breach of contract and for tort damages, were barred as a matter of law by the Act, specifically TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1986). Ms. Delaney appealed and we affirm the summary judgment.

The summary judgment rule provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962). Summary judgments are reviewed according to the following rules:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Ms. Delaney challenges the summary judgment with four points of error. The first three points have to do with the trial court's disposition of her contract and tort claims and are argued together. Ms. Delaney specifically argues that the trial court erred in granting the University summary judgment on her breach of contract claim; on her claim for torts caused by the University during the course and scope of its proprietary activities in running a dormitory; and on her additional claims under the Texas Tort Claims Act.

The state is not liable for torts of its officers or agents in the absence of a constitutional or statutory provision therefor. *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). State universities have been held to be agencies of the state and to enjoy sovereign immunity. *Bagg v. University of Texas Medical Branch at Galveston,* 726 S.W.2d 582, 584 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Lowe,* 540 S.W.2d at 298. The Texas Tort

Claims Act, which became effective on January 1, 1970, expressly waives governmental immunity for all governmental units to the extent of the liability expressed in the Act. However, the Act also contains a substantial list of exceptions and exclusions. *Turvey v. City of Houston,* 602 S.W.2d 517, 519 (Tex.1980). Included among the exceptions is section 101.057(2), which states that the Act "does not apply to a claim arising out of assault, battery, false imprisonment, or any other intentional tort...." In this case, the trial court found that any liability on the part of the University was foreclosed by section 101.-057(2).

■ Preliminarily, Ms. Delaney argues that the University offered no summary evidence to support any of its contentions but instead relied on its pleadings. She asserts that pleadings do not constitute summary judgment proof. In *Hidalgo v. Surety Sav. and Loan Ass'n,* the supreme court stated that pleadings simply outline the issues but are not evidence, even for summary judgment purposes. 462 S.W.2d 540, 543 (Tex.1971). However, the court also noted the following:

> We are not to be understood as holding that summary judgment may not be rendered, when authorized, on the pleadings, as, for example, when suit is on a sworn account under Rule 185, Texas Rules of Civil Procedure, and the account is not denied under oath as therein provided, or when the plaintiff's petition fails to state a legal claim or cause of action. In such cases summary judgment does not rest on proof supplied by pleading, sworn or unsworn, but on deficiencies in the opposing pleading.

*Id.* at 543 n. 1. The University maintains that it specially excepted to Ms. Delaney's pleadings because she failed to state a cause of action under the Tort Claims Act. When she insisted on characterizing her claim as one arising from contract and not from sexual assault, the University relied on deficiencies in her pleadings and, in line with *Hidalgo,* moved for summary judg-

ment. We find no problem with the summary judgment proof in this context.

■ In point of error one, Ms. Delaney argues that the trial court erred in granting the summary judgment on her breach of contract claims. Prior to matriculation, Ms. Delaney signed a housing and food service contract with the University. She contends the University has judicially admitted that the contract is legally enforceable because language in the document states that it is "legal and binding." She further argues that the University is liable for breach of contract regardless of its status as a state agency because the Texas Education Code provides that the University can sue and be sued on the basis of contractual obligations. She argues that the doctrine of sovereign immunity is therefore inapplicable.

The Board of Regents indeed has the power to sue and be sued in the name of the University. Tex.Educ.Code Ann. § 111.33 (Vernon Supp.1990). However, by granting permission to be sued, the legislature did not thereby admit liability or create liability in favor of the plaintiff, but merely granted permission to test the matter through the courts. *State v. Brannan,* 111 S.W.2d 347, 349 (Tex.Civ.App.—Waco 1937, writ ref'd); *see also Jones v. Texas Gulf Sulphur Co.,* 397 S.W.2d 304, 307 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.) (statute merely provides that a navigation district and its commissioners may sue and be sued in the courts of this state; it does not in any way militate against their governmental immunity).

Furthermore, regardless of the breach of contract characterization, the claims in this case arise out of an intentional tort. In *Townsend v. Memorial Medical Center,* a patient was raped in an elevator by an orderly while being transported from one floor to another. 529 S.W.2d 264, 265 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). The patient stated a cause of action under the Tort Claims Act by alleging an injury that involved the use of a motor-driven vehicle and also the condition and use of tangible property.[1] The court, however,

---

1. *Townsend* also involved a breach of contract claim; however, the trial court found that there

found that her cause of action was prohibited by the intentional tort exception of the Act and stated:

> Although the appellant contends on appeal that the rape, an intentional tort, is not the gist of her complaint, her petition leaves no other fair construction possible. If the appellant believes she has stated a cause of action such that injury occurred without the criminal act committed by the hospital orderly, she has not so stated with sufficient clarity in her petition.

*Id.* at 267; *see also Trevathan v. State,* 740 S.W.2d 500, 502 (Tex.App.–Houston [1st Dist.] 1987, writ denied). Therefore, the trial court did not err in finding that Ms. Delaney's contract claims were barred by the Act. Point of error one is overruled.

■ In point of error two, Ms. Delaney argues that the trial court erred in granting the University summary judgment on her claims for torts caused by the University during the course and scope of its proprietary activities in running a dormitory.

Certain governmental entities, particularly municipalities, function in a dual capacity. Generally, activities carried on pursuant to the state's obligation to promote the general welfare of the public or which are voluntarily assumed for the benefit of the public are performed in a governmental capacity. Activities performed primarily for the benefit of the inhabitants of the affected entity or agency are proprietary. *Genzer v. City of Mission,* 666 S.W.2d 116, 119–20 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Negligent performance of proprietary functions can result in liability. *See City of Gladewater v. Pike,* 727 S.W.2d 514, 519 (Tex.1987). Governmental functions, however, are immune to the extent that immunity is not waived by the Tort Claims Act. *Genzer,* 666 S.W.2d at 119.

Although absolute governmental immunity has been substantially modified in recent years, thus far in Texas, the proprietary/governmental distinction has not been applied to acts performed by the state. The rationale has been stated thusly:

> All authority possessed by a state is that conferred on it as a sovereignty by the people and consequently it can act in no other capacity than that of a sovereignty.... As a sovereignty, it is immune from liability for torts and since it can act in no other capacity than that of a sovereignty, it is necessarily immune from liability for torts at all times and in all its capacities.

*State v. Brannan,* 111 S.W.2d at 348; *see also Hodge v. Lower Colorado River Auth.,* 163 S.W.2d 855, 856 (Tex.Civ.App.—Austin 1942, writ dism'd by agr.) ("It is equally well settled, however, that a county is a governmental agency and as such is immune from liability for all torts, just as is the State itself, unless such liability is created by statute."); *Benson v. Dallas County Flood Control Dist.,* 301 S.W.2d 729, 732 (Tex.Civ.App.—Dallas), *rev'd on other grounds,* 157 Tex. 617, 306 S.W.2d 350 (1957) (delineates rule of liability for cities and towns versus that for counties and states: the latter are not liable whether agents are acting in governmental or proprietary capacities). Consequently, the state is not liable for torts of its officers or agents in the absence of a constitutional or statutory provision. *Lowe,* 540 S.W.2d at 298.

In her brief, Ms. Delaney cites a very similar New York case, *Miller v. State,* 62 N.Y.2d 506, 467 N.E.2d 493, 478 N.Y.S.2d 829 (1984), and urges us to consider it as controlling authority here in the absence of a specific Texas precedent. In *Miller,* a student at the State University of New York was raped by an assailant who entered her dormitory through an unlocked door. 62 N.Y.2d at 510, 467 N.E.2d 493, 478 N.Y.S.2d 829. She sued the state for damages, and the trial court found liability based on her theory that the state was acting in a proprietary capacity as a landlord. The intermediate court, however, reversed on the grounds that although the plaintiff sought to recover based on the state's liability as a landlord, the claim was actually based on the state's failure to pro-

was no contract, expressed, implied in fact or

implied in law. 529 S.W.2d at 266.

vide adequate police protection. *Id.* at 510–11, 467 N.E.2d 493, 478 N.Y.S.2d 829.

The New York Court of Appeals, in turn, reversed the intermediate court and held the state liable. The court found error in the characterization of the claim as one sounding solely in inadequate police protection. *Id.* at 512, 467 N.E.2d 493, 478 N.Y.S.2d 829. The court found further that when the state operates housing, it is held to the same duty as private landlords in the maintenance of physical security devices in the building itself. *Id.* at 509, 467 N.E.2d 493, 478 N.Y.S.2d 829. The court recognized that the state acts in a dual role—in a proprietary capacity as a landlord by its ownership and control of the SUNY campus and in a governmental capacity by providing police protection through the appointment of campus security officers. *Id.* at 512, 467 N.E.2d 493, 478 N.Y.S.2d 829. However, the court also noted the following:

> A governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions. This begins with the simplest matters directly concerning a piece of property for which the entity acting as landlord has a certain duty of care, for example, the repair of steps or the maintenance of doors in an apartment building. The spectrum extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions, for example, the maintenance of general police and fire protection. Consequently, any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the State's alleged negligent action falls into, either a proprietary or governmental category.

*Id.* at 512–513, 467 N.E.2d 493, 478 N.Y.S.2d 829. Finally, the court pointed out that when the liability of a governmental entity is at issue, it is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which

that act or failure to act occurred that governs liability. In *Miller*, the negligent act under the landlord theory of liability was the failure to lock the outer doors of the dormitory. *Id.* at 514, 467 N.E.2d 493, 478 N.Y.S.2d 829.

Ms. Delaney argues that if we apply the *Miller* continuum to this case, there is no question that she has a cause of action against the state in its proprietary function as a landlord for its failure to maintain a secure outside door. She makes a cogent argument. However, as previously noted, Texas does not acknowledge that a state may act in a proprietary as well as a governmental capacity. While the concept of state sovereignty is articulated in cases which pre-date the trend to abolish absolute governmental immunity, more recent cases continue to follow that analysis. For example, the University cites *Townsend v. Memorial Medical Center* as dispositive. 529 S.W.2d at 264. In *Townsend* the court found that the intentional tort exception prohibited a cause of action under the Tort Claims Act. The court also indicated that the hospital's alleged negligence could not have been a proximate cause of the injury because the rape was an intervening cause. *Id.* at 266–67.

In *Trevathan v. State*, the court upheld a summary judgment for the state on a tort claim resulting from an assault in a bath house at a state park. 740 S.W.2d at 500. The plaintiffs alleged negligence in the state's failure to provide adequate security, namely to lock the entry gate and to provide locks for the bath house, proper lighting and adequate patrolling. *Id.* at 502. The court found that the Trevathans' claim clearly arose from the failure to provide, or failure in the method of providing, police protection, which is yet another bar to a cause of action under the Act. *Id.; see* Tex.Civ.Prac. & Rem.Code Ann. § 101.055(3) (Vernon Supp.1990). The court also rejected the Trevathans' argument that the intentional tort exception was inapplicable to third party assaults and, further, rejected their defective premises argument because it was the conduct of the assailant that proximately caused the injury, exclusive of

the condition of the property. *Trevathan*, 740 S.W.2d at 502. Curiously, the court also made the following statement:

We conclude that *because no argument is made that the operation of the park by the State was a proprietary function, as opposed to a governmental one*, and that even if the Trevathans can prove each and every element of their cause of action, they cannot recover unless the State waives its sovereign immunity.

*Id.* (emphasis added).

Because Texas does not apply the proprietary/governmental dichotomy to functions performed by the state, we reluctantly agree that Ms. Delaney has no cause of action against the state for torts allegedly caused by the University during the course and scope of its activities in running a dormitory. Point of error two is therefore overruled.

█ In point of error three, Ms. Delaney argues that the trial court erred in granting summary judgment on her additional claims under TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.021(2) and 101.022(a) (Vernon 1986). Those sections read as follows:

§ 101.021. Governmental Liability

A governmental unit in the state is liable for:

. . . . .

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

§ 101.022. Duty Owed: Premise and Special Defects

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

The University argued that these claims were prohibited by several exceptions in the Act, including the intentional tort exception. Ms. Delaney maintains, however, that statutory construction requires us to limit these more general prohibitionary sec-

tions to the extent necessary to allow the claims specifically provided by sections 101.021(2) and 101.022. She also argues that the supreme court has recently ruled that the act should be liberally construed in favor of a waiver of immunity. *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169, 170 (Tex.1989).

While *Robinson* did espouse liberal construction of the Tort Claims Act, that case dealt only with interpretation of section 101.021(2) and did not involve the interaction among sections of the act. That relationship was addressed in *Townsend v. Memorial Medical Center.* 529 S.W.2d at 264. There the plaintiff alleged an injury that involved the use of a motor-driven vehicle and also the condition and use of tangible property. The court of appeals noted the following:

If this Court is to find that a cause of action has been stated we must find that a cause of action has been stated under Section 3 of the Act [now section 101.-021] and not prohibited by Section 14(10) of that Act [now section 101.057(2)].

*Id.* at 266. The intentional tort exception therefore limits the waiver of immunity provided in section 101.021 and, in point of fact, must also limit the waiver provided in section 101.022.

Ms. Delaney also argues in point of error three that her claims were not barred by the police protection and discretionary acts exceptions of the Tort Claims Act as argued by the University in its motion for summary judgment. However, because we agree with the trial court that the intentional tort exception does bar liability in this instance, it is not necessary that we address this argument. Point of error three is overruled.

Finally, in her fourth point of error, Ms. Delaney maintains that if it is determined that the trial court also granted the University's claim concerning improper service, then that decision is reversible error because the University was properly served. In its motion for summary judgment, the University argued that it was entitled to judgment as a matter of law because Ms. Delaney failed to comply with the two-year

statute of limitations. This failure resulted from serving the wrong party. In its brief to this court, however, the University states that it neither urged nor argued the statute of limitations defense at the summary judgment hearing, but instead relied on sovereign immunity and the Tort Claims Act. More importantly, the trial court's granting of the University's summary judgment motion was based on his conclusion that Ms. Delaney's claims were barred by the Tort Claims Act, and the order did not address the statute of limitations. As we are affirming the summary judgment for the reasons stated in the order, it is therefore not necessary that we address point of error four.

We further deny Ms. Delaney's motion that this court take judicial notice of certain facts and provisions contained in the Code of Ordinances for the City of Houston as the Code is not relevant to our decision in this case.

The University is not liable in contract or in tort as a matter of law, and there is no genuine issue of material fact. We therefore affirm the summary judgment.

ELLIS, Justice, dissenting.

On motion for rehearing, the original dissenting opinion is withdrawn and is replaced with the following opinion.

I respectfully dissent. The supreme court recently confirmed that the Texas Tort Claims Act should be liberally construed in favor of a waiver of immunity. *Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169, 170 (Tex.1989). In keeping with that directive, I would reverse the summary judgment and allow a jury to assess the issues involved.

A governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986). Ms. Delaney's injury occurred because of a broken lock, a condition of real property that the University neglected to repair after several re-

quests. Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, under Texas law, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex.1985).

The trial court and the majority found that Ms. Delaney's claims were barred by TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1986), the intentional tort exception to the Act. However, this exception applies only to torts committed by governmental employees. *See Estate of Garza v. McAllen Indep. School Dist.,* 613 S.W.2d 526, 530 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.) (dissenting opinion). It is therefore not applicable when the intentional tort is inflicted by a third party as in this case.

To this dissent I also add my belief that the state should be held liable for tortious acts resulting from functions that are proprietary in nature. Ms. Delaney was injured through an apparent act of negligence, and her cause of action should not be barred simply because her injury occurred at a state university rather than at a private institution or in an off-campus apartment. Underscoring this inequity is the fact that in Texas we do apply the proprietary/governmental analysis to certain governmental units but not to others. As the Indiana Supreme Court has noted:

> It seems to us to be consistent in this principle of law and its application in this jurisdiction that if certain municipalities and the county governments are liable to the extent of the operation of proprietary functions, then there is no reason why the state as a principal should not likewise be liable for its proprietary function. It is of little concern to the injured party whether the injury was caused by a city, county or state.

*Perkins v. State,* 252 Ind. 549, 251 N.E.2d 30, 35 (1969).

Regarding the tort claims at issue in this case, I find the reasoning in *Miller v. State,* discussed in the majority opinion, to

be persuasive. 62 N.Y.2d 506, 467 N.E.2d 493, 478 N.Y.S.2d 829 (1984). That court suggests that in determining the extent and scope of the state's duties as a landlord, one must distinguish those liabilities attendant upon governmental activities which have displaced or supplemented traditionally private enterprises and are performed in a proprietary capacity from those which are and have always been considered governmental in nature. 62 N.Y.2d at 513, 467 N.E.2d 493, 478 N.Y.S.2d 829 (citations omitted). Duties relating to tenancy in buildings have traditionally been carried on through private enterprise. *See id.* at 514, 467 N.E.2d 493, 478 N.Y.S.2d 829. The *Miller* court concluded that the maintenance of minimal security measures such as keeping dormitory doors locked fell within the scope of the state's proprietary function as a landlord.

Viewed in the context of proprietary and governmental functions as defined in *Genzer v. City of Mission*, 666 S.W.2d 116, 119–20 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (also discussed in the majority opinion), maintenance of such minimal security measures at Settegast Dormitory is an activity performed primarily for the benefit of the inhabitants of the affected entity or agency, in this case, the students at the University of Houston. The housing operation itself is not mandated by the Education Code. Furthermore, it is supported by dormitory rentals. *Gulf Regional Educ. Television Affiliates v. University of Houston*, 746 S.W.2d 803, 806 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

I agree with Ms. Delaney's contention that the trial court erred in granting the University summary judgment on her claims for torts caused by the University during the course and scope of its proprietary activities in running a dormitory. If the state is engaged in a proprietary function, it should be on the same footing as any private individual without the shield of governmental immunity. *See Bofysil v. State*, 44 Mich.App. 118, 205 N.W.2d 222, 230 (1972). I would argue that Ms. Delaney has the right to have a trier of fact decide this issue as well. I would reverse

the summary judgment and remand the cause for trial.