**Christopher EAKLE and Susan Eakle, Individually and as Next Friend for Nathaniel Eakle, Minor, Appellants,**

v.

**TEXAS DEPARTMENT OF HUMAN SERVICES, et al., Appellees.**

No. 3–90–162–CV.

Court of Appeals of Texas, Austin.

Aug. 30, 1991.

Rehearing Overruled Oct. 23, 1991.

---

Steve Gibbins, Gibbins & Winckler, Austin, for appellants.

Jim Mattox, Atty. Gen., Norberto Flores, Asst. Atty. Gen., Austin, for appellees.

Before CARROLL, C.J., and JONES and SMITH, JJ.

SMITH, Justice.

This appeal causes us to revisit the question of what kind of governmental actions will subject the State to tort liability under the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001–101.109 (1986).

Christopher and Susan Eakle obtained a list of "registered family homes" compiled by the Texas Department of Human Services ("TDHS"). From this list they selected Phyllis Trotter Watt to care for their infant son, Nathaniel, in her home. While in Watt's care, Nathaniel suffered brain damage and oxygen deprivation, injuries generally attributed to violently shaking a child or repeatedly slamming his head against a solid object. Nathaniel Eakle was rendered partially blind and profoundly brain-damaged.

The Eakles sued Watt and TDHS, as well as the commissioner, several deputy and assistant commissioners, and one employee in the daycare licensing division of TDHS, for negligence and gross negligence. The Eakles' petition alleged that appellees proximately caused their son's injuries by: 1) promulgating inadequate standards for registering family homes; 2) compiling and publishing its list of registered family homes; 3) failing to investigate more fully the background of applicants seeking to register a family home; and 4) failing to develop a reporting system to exclude unqualified individuals from offering daycare in their homes. The trial court severed the action against Watt and granted appellees' motion for summary judgment. The Eakles bring this appeal. We will affirm the summary judgment.

### Texas Tort Claims Act

Neither TDHS, nor its commissioners and employees, may be sued for damages unless the Texas Tort Claims Act ("Tort Claims Act") waives the state's governmental immunity for the alleged wrongful act. *Lowe v. Texas Tech*, 540 S.W.2d 297, 298 (Tex.1976) (suit against a state agency is a suit against the state). The Tort Claims Act waives immunity of a governmental unit for the tortious conduct of public servants acting within the scope of their employment if the negligence arises from the operation or use of motor-driven vehicles or equipment, or from a defective condition or use of real or tangible personal property, and if, under the circumstances, a private person would be liable to the claimant according to Texas law. Tex.Civ.Prac. & Rem.Code Ann. § 101.021 (1986). The statute provides legislative consent to sue a governmental unit for a claim allowed under the Tort Claims Act. § 101.025(b).

The Eakles assert that the Tort Claims Act waives TDHS' immunity in this instance because the injury to their son arose from the "use of tangible personal property," namely the paper on which the list of registered family homes was published and the paper used to promulgate minimum standards for registering those facilities. § 101.021(2) (1986).

TDHS asserts the Eakles have not alleged facts that bring this cause of action within the waiver of immunity for personal injuries caused by a use of property. Section 101.021(2). TDHS also relies on two exceptions to liability under the Tort Claims Act to defeat the Eakles' suit: 1) section 101.056, which precludes liability for failure to perform an act committed to agency discretion; and 2) section 101.-057(2), which precludes liability for claims "arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities." Tex.Civ.Prac. & Rem.Code Ann. §§ 101.056, 101.057 (1986). Finally, appellees assert the defense of official immunity to defeat any action against the commissioners and the employee sued individually. On summary judgment appellees had the burden to establish the defense of governmental immunity and quasi-judicial official immunity. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment record, we must determine whether a disputed material fact issue exists that would preclude a summary judgment. We indulge every reasonable inference and resolve any doubts in favor of non-movants, the Eakles. *See Bayouth v. Lion Oil Co.* 671 S.W.2d 867, 868 (Tex. 1984). The movants must establish the essential elements of their asserted theories of defense, as a matter of law. *MMP, Ltd., v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).

### Affirmative Defense of Governmental Immunity

In their first point of error, the Eakles complain that TDHS failed to establish the affirmative defense of governmental immunity as a matter of law. Appellants argue that the State's immunity was waived under the Act because the list of registered family homes or the list of minimum standards promulgated by TDHS constituted tangible property. They rely on *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex.1983), in which the supreme court held that plaintiff had stated a cause of action under section 101.021(2) of the Tort Claims

Act by alleging that an emergency-room physician improperly interpreted electrocardiographic reports reflecting a classic pattern of myocardial infarction when he released the patient and sent him home, where he died the same day of a heart attack. The Eakles equate the papers reflecting the electrocardiographic charts and graphs, considered to be tangible property in *Salcedo*, with the papers listing registered family homes published by TDHS.

The Eakles also rely on *Salcedo* to argue that the tangible property need not proximately cause the complained of injury. The court in that case found negligent conduct "involving" some use of tangible property sufficient to state a cause of action under section 101.021(2). *See also Texas Department of Mental Health and Mental Retardation v. Petty*, No. 3–90–002–CV (Tex.App.—Austin, August 28, 1991) (not yet reported). We agree with appellants that *Salcedo* expanded the scope of governmental liability under section 101.021(2) to include wrongful conduct that involves the misuse of tangible property, even when the property may be only incidental to the negligence and not a proximate cause of the alleged injury. We disagree that this holding makes the State liable for an injury suffered under the circumstances of the present case.

The existence of a list published on a piece of paper and an alleged injury does not state a claim under section 101.021(2). More is required: the negligence that is a proximate cause of the injury must involve the use or misuse of the property. TDHS has directed our attention to another case in which the mere existence of a piece of paper, coupled with an injury, was held not to have stated a cause of action involving the use of tangible property. In *Wilkins v. State*, 716 S.W.2d 96 (Tex.App.1986, writ ref'd n.r.e.), the plaintiffs alleged that the Department of Highways and Public Transportation was liable under section 101.-021(2) for negligently issuing a permit to transport a wide mobile home over a narrow stretch of highway. Plaintiffs asserted that the paper permit, like the list in the instant case, evidenced a use of tangible

property sufficient to waive governmental immunity. The court disagreed:

> A piece of paper evidencing the permission was issued to Mobile Home Transports as evidence of the permission granted. This in no way constituted a use of tangible property by a state agency, making the State liable under the Tort Claims Act.

716 S.W.2d at 98.

By analogy, Texas courts have held that negligence in directing traffic around a car stalled on a public highway did not state a cause of action involving the use of a motor vehicle under section 101.021(1):

> The allegations that the officers failed to direct traffic does not involve the operation or use of a motor-driven vehicle in its common and ordinary sense. Likewise, the failure to have the vehicle towed away, leaving the scene unattended, and the failure to make arrangements for the removal of the stalled vehicle do not constitute negligence arising from the operation and use of a motor-driven vehicle.

*Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 809 (Tex.Civ.App.1972, writ ref'd n.r.e.).

Similarly, plaintiffs failed to state a claim under section 101.021(1) for injuries suffered from a school district's alleged failure to discipline and control students fighting on a school bus:

> While it is true that the unfortunate event took place on a motor vehicle, it was not through the motor vehicle's use or operation of the motor vehicle that the incident occurred.

*Estate of Garza v. McAllen Ind. School Dist.*, 613 S.W.2d 526, 528 (Tex.Civ.App. 1981, writ ref'd n.r.e.).

The gravamen of the Eakles' complaint is that TDHS was negligent in publishing the list of registered family homes without completing a more thorough background investigation of the applicants and was negligent in promulgating minimum standards for its registration process. The negligence they complain of is the minimum background check required before creation and publication of the list.

Without deciding whether agency standards or the list of registered family homes once they were reduced to paper constituted tangible property sufficient to state a cause of action under section 101.021(2) of the Tort Claims Act, we conclude that the papers memorialized discretionary actions that are excepted from liability under section 101.056 of the statute. *See Robinson v. City of San Antonio*, 727 S.W.2d 40 (Tex.App.1987, writ ref'd n.r.e.) (a court decision reduced to a piece of paper does not constitute tangible property for the purpose of waiving governmental immunity under § 101.021(2)). The fact that agency standards were reduced to a piece of paper, or that inadequately investigated facilities were listed on a piece of paper, does not remove the discretion that TDHS had to establish standards for registration and to approve or disapprove registration after applying its standards to the applicants.

Section 101.056, like its federal counterpart, 28 U.S.C.A. § 2680(a) (1965), exempts certain discretionary acts from tort liability. If the governmental act complained of is one committed to agency discretion, the Tort Claims Act does not intend for the government to be liable for the harm that results.

We understand governmental discretion to include the ordinary definition of discretion earlier published by this Court in a discussion of trial court discretion:

> In common usage, the word "discretion" signifies a power to choose among alternatives within legal bounds. This power is routinely given to government officials because government cannot be conducted without the exercise by someone of the power to choose with *authority*, that is to say, the power to *determine*, according to the official's best judgment, what alternative is best in the circumstances.

*Landon v. Jean–Paul Budinger, Inc.*, 724 S.W.2d 931, 935 (Tex.App.1987, no writ).

■ This Court has formulated a functional approach to determining which discretionary acts should subject a governmental unit to liability:

The discretionary function exception is limited to the exercise of governmental discretion and does not apply to the exercise of nongovernmental discretion such as professional or occupational discretion. The driver of a mail truck makes many discretionary decisions but they are not within the exception because they involve driving discretion, not governmental discretion.... The government's bank examiners subject the government to liability for their failure to detect corruption that would be discovered by standard methods of examination but not for deciding what the frequency or intensity of the bank examinations should be.

*Christilles v. Southwest Texas State University,* 639 S.W.2d 38, 42 (Tex.App.1982), *citing* 3 K. Davis, *Administrative Law Treatise* § 25.08 at 403–4 (Supp.1982). The concept of "governmental discretion," distinguished from occupational or professional discretion, focuses our attention on the degree of interference that is desirable to impose on the delivery of governmental services.

Some commentators have recast this analysis of governmental discretion in terms of traditional separation of powers:

[T]he purpose is ... to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served are several—e.g., effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government.

*State v. Terrell,* 588 S.W.2d 784, 787 (Tex. 1979).

The decision to exclude liability for discretionary actions, like the statutory exemption of liability for damages caused by civil disturbances and for injuries arising out of the failure to provide police and fire protection, is grounded in the desire to prevent judicial review of these policy decisions:

Were judges and juries allowed to pass on the wisdom of a city's decision not to control a riot or prevent subsequent looting, the ultimate authority for making such decisions would no longer lie with the officials who, traditionally, are politically responsible for making such decisions. The Legislature has apparently chosen to let that ultimate authority remain with those government officials.

*Id.* Restated, the critical inquiry for the court in immunity cases becomes, does imposing liability cause us "to substitute ourselves as the planning stage of government?" Greenhill, *"Should Governmental Immunity for Torts be Re-examined, And, If So, By Whom?"* 31 Texas B.J. 1036, 1070 (1968).

This Court has previously relied on a separation-of-powers analysis to determine when to impose tort liability and when to retain governmental immunity under section 101.056:

In analyzing the discretionary function exception, it should be determined whether a particular matter of discretion is one committed to the executive or legislative branches of government which the courts should not second-guess. If the decision is not of this type, the government remains liable for its employees' negligent exercise of discretion.

*Christilles,* 639 S.W.2d at 42.

Analyzing the facts of the present case from this perspective, we determine that the decision to have a registration process for individuals offering childcare in their homes, even without the resources to inspect those facilities or investigate each owner's background, is a decision committed to the discretion of an executive agency. It is not proper for this Court to second-guess the agency's decision that some registration process, even one that imposes only minimal standards or one that relies primarily on self-reporting, is better than no regulation of home-centered daycare facilities.

The number or nature of regulations to impose, like the number of fire fighters or police officers to deploy, is best left to agency discretion. "[D]amages resulting from a government's decision to provide only three fire trucks for a community may not be recovered against the governmental

unit on the theory that the government was negligent in providing an inadequate number of fire trucks." *State v. Terrell*, 588 S.W.2d 784, 788 (Tex.1979). Likewise, immunity is preserved when damages result from an agency's decision to require only minimum standards to register home-centered childcare facilities. Court oversight of such policy decisions would unduly and unwisely interfere with the effective functioning of the state agency involved and would displace the authority of those responsible for making such decisions. Section 101.056 of the Act prevents judicial review of this decision.

Appellees argue that TDHS had no discretion to enact such minimal standards for registering home-centered childcare facilities because of its statutory duty to regulate childcare facilities in a manner that would promote the health, safety and well-being of Texas children. Tex.Hum.Res. Code Ann. § 42.042(e) (1990). We disagree. The Human Resources Code specifically reserves to TDHS the discretion to set different minimum standards for the various categories of childcare facilities. Tex.Hum. Res.Code Ann. § 42.042(g) (1990). TDHS exercised this discretion when it adopted different minimum standards for registered family homes than for licensed daycare centers.

We acknowledge that the Eakles have suffered a great loss, but we are bound by the terms of the Tort Claims Act. The list on which the Eakles relied to select Ms. Watt had, printed on every page, an explicit warning that TDHS did not inspect or visit the listed facilities. Even careful background investigation could not eliminate all such tragedies as the one suffered by Nathaniel Eakle. Appellants assert that the agency was negligent in not having interviewed the adult children of Ms. Watt who could have revealed that their mother had been a physically abusive mother, unfit to care for children. Although it may be a desirable procedure to locate and interview the adult children of all prospective childcare providers in this state if funds are available, the nature and extent of any background investigation is assigned by law to TDHS. The statute spe-

cifically commits the discretion for regulating childcare facilities to TDHS and we refuse to substitute this Court's thoughts on regulation for those of the agency.

We are persuaded that even if the alleged negligence involved the use of tangible property, section 101.056 of the Tort Claims Act retains immunity for discretionary actions of TDHS, such as determining standards for the registration or nonregistration of daycare providers. The trial court did not specify on which grounds it granted summary judgment in favor of TDHS. Because we hold that TDHS has satisfied its burden of proof to support the summary judgment based on section 101.-056 of the Tort Claims Act, we do not address appellants' other arguments under point number one. *See Freedman v. Briarcroft Property Owners, Inc.*, 776 S.W.2d 212, 218 (Tex.App.1989, writ denied). We overrule appellants' first point of error as to TDHS.

### Official Immunity of TDHS Commissioners and Employees

■ Under point of error one, the Eakles also contend that the TDHS commissioners and an employee involved in the registration of Watt's home failed to establish the affirmative defense of official immunity as a matter of law. Public officials and employees whose job status is classified as "quasi-judicial" enjoy immunity from liability when they act in good faith within the scope of employment. *Russell v. Dept. of Human Resources*, 746 S.W.2d 510, 513 (Tex.App.1988, writ denied); *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex.App.1986, no writ). To prevail on summary judgment, the individual appellees had to prove (1) that their positions had quasi-judicial status, (2) that they were acting within their authority, and (3) that they were acting in good faith.

■ Quasi-judicial status attaches to jobs that involve discretionary acts rather than ministerial acts. *Austin*, 711 S.W.2d at 66. Investigating and acting on gathered facts has been designated quasi-judi-

cial action. *Torres v. Owens*, 380 S.W.2d 30 (Tex.Civ.App.1964, writ ref'd n.r.e.). *See also Wyse v. Texas Dept. of Highways and Public Transp.*, 733 S.W.2d 224, 227 (Tex.App.1986, writ ref'd n.r.e.) (investigating police misconduct was a discretionary act); *Austin*, 711 S.W.2d at 68 (collecting facts about a child abuse report and acting on those facts was a discretionary act).

■ At the time of Nathaniel Eakle's injury, appellee Johnston was the commissioner and chief administrator of TDHS; appellees Stevenson, Mainprize, and Ross–Dukler each served as deputy or assistant commissioners. Commissioners have repeatedly been held to have a quasi-judicial status that affords official immunity. *See Richardson v. Thompson*, 390 S.W.2d 830, 833–34 (Tex.Civ.App.1965, writ ref'd n.r.e.) (director and commissioners of the Commission for the Blind were public officials for the purpose of enjoying official immunity); *Torres v. Owens*, 380 S.W.2d at 34 (commissioners of a county Board of Navigation had quasi-judicial status and enjoyed official immunity); *Benson v. Dallas Cty. Flood Control Dist.*, 301 S.W.2d 729, 733 (Tex.Civ.App.1957), reversed on other grounds, 157 Tex. 617, 306 S.W.2d 350 (1957) (director and general manager of a flood control district and the supervisors of the city and county levee improvement project had quasi-judicial status and enjoyed official immunity).

■ Appellee Wiggins was an employee in the Registered Home Licensing division. Wiggins approved Watt's re-registration application in December 1984. As part of her job, Wiggins collected information from the registration applications, from Child Protective Services, and from a computer network to cross-reference child abuse investigations. After collecting the data, Wiggins had the authority to approve or disapprove an application to operate a registered family home. Because her job involved collecting facts and making decisions based on those facts, Wiggins enjoyed a quasi-judicial status. *See Russell*, 746 S.W.2d at 513; *Austin*, 711 S.W.2d at 68.

■ The Eakles contend that Human Resources Code § 42.042 imposes a statutory duty on TDHS officials and employees to protect the health, safety and welfare of children entrusted to child-care facilities. This statutory duty to act, the Eakles contend, removes appellees' discretion in carrying out their duties and converts their acts to ministerial acts. The *Austin* court rejected a similar argument that investigation of child abuse under Tex.Fam.Code § 34.05 was ministerial rather than discretionary action. 711 S.W.2d at 67–68. We reject it here.

Mandatory language in a statute does not, of itself, make an act ministerial. In fact, the licensing and registration process has never been deemed a ministerial act, and the Eakles do not provide any summary judgment showing that the appellees were merely carrying out orders or performing tasks which require no judgment or decision-making. The record shows that Wiggins had discretionary authority to register family homes.

The record contains no showing of bad faith on behalf of the commissioners or Wiggins. *See Russell*, 746 S.W.2d at 514 and *Austin*, 711 S.W.2d at 68 (summary judgment upheld on the basis of official immunity when the plaintiffs did not present evidence of bad faith by the defendants). Nor do the Eakles contend that the appellees acted outside the scope of their employment. The record reflects that these individual appellees acted within the scope of their authority when they promulgated minimum standards for registration and when they compiled and distributed a list of the registered childcare facilities. Because we affirm summary judgment in favor of the individual appellees based on the doctrine of official immunity, we do not reach appellants' contention that the commissioners are liable under the doctrine of respondeat superior. *See Freedman*, 776 S.W.2d at 218. Accordingly we overrule the first point of error as to the individual appellees.

### No Material Fact Issues

■ In their second point of error, appellants argue that they have raised vari-

ous fact issues that should defeat the summary judgment in favor of TDHS. However, all of the alleged facts relate to the Eakles' claim that TDHS and the individual appellees were negligent. When appellees have conclusively established that they cannot be held liable because of government and official immunity, any facts relating to their negligence are immaterial. *See Augustine v. Nusom*, 671 S.W.2d 112 (Tex. App.1984, writ ref'd n.r.e.) (fact issues raised in suit against employees of Department of Human Resources for failure to close an unlicensed daycare facility are immaterial when employees have established affirmative defense of official immunity.) A motion for summary judgment cannot be defeated by the existence of an immaterial fact issue. *Austin v. Hale*, 711 S.W.2d at 68. Accordingly, appellants' second point of error is overruled and the summary judgment is affirmed.