Billy B. HALE, Appellant,

v.

COLORADO RIVER MUNICIPAL WATER DISTRICT, John L. Taylor, Clyde McMahon, Sr., John Currie, R.S. Yorgesen, Clyde Yarborough, Charles R. Perry, Jim Bill Little, R.S. Searls, Jr., Richard D. Gillham, David Holt, John A. Fagin and Rod Waller, Appellees.

No. 3–90–182–CV.

Court of Appeals of Texas, Austin.

Oct. 30, 1991.

Rehearing Overruled Dec. 10, 1991.

Gerald G. Hale, Gilliam, Cockrum, Duren & Hale, Goldthwaite, for appellant.

Milton C. Colia, Mr. Scott T. Doggett, Griffis, Colia, Motl and Junell, San Angelo, for appellees.

Before ABOUSSIE, JONES and SMITH, JJ.

## OPINION

JONES, Justice.

Billy B. Hale appeals from a take-nothing summary judgment rendered in favor of appellees, the Colorado River Municipal Water District ("the District") and its directors in their individual capacities.[1] Hale's suit against the individual directors was for negligent or intentional acts that allegedly resulted in the loss of his peanut crop, while his suit against the District was for a "taking," without compensation, of his right to divert and use river water for irrigation. Appellees moved for summary judgment, asserting that (1) the District enjoys governmental immunity, and the directors, because they acted within the scope of their statutory authority, have official immunity from suit; and (2) the undisputed facts do not give rise to a cause of action for a constitutional taking. The trial court granted appellees' motion for summary judgment.

Hale asserts that the trial court erred in rendering a summary judgment because: (1) the directors exceeded the scope of their authority and are, therefore, individually liable for tortious conduct, and (2) the undisputed facts show a constitutional taking of his property, for which the Texas Constitution requires "adequate compensation." We will affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

Hale owns land lying along the Colorado River more than 100 miles downstream from the E.V. Spence Reservoir (Lake Spence) and Natural Dam Lake. In 1956 Hale began diverting water from the river and using it to irrigate his crops. In 1981 the State expressly recognized that Hale had a right "to divert and use not to exceed 100 acre-feet of water per year from ... the Colorado River" for irrigation purposes. When the present dispute arose during the summer of 1988, Hale had planted 65 acres of peanuts and was irrigating the plants with water drawn from the river.

Natural Dam Lake, which is upstream from Lake Spence, appears to have been formed by the erosion of a glacial salt deposit and, consequently, contains a very high level of chlorides. Rainfall in the years preceding this dispute had been unexpectedly heavy. As a consequence, spillage from Natural Dam Lake had carried various chlorides into the Colorado River upstream from Lake Spence, which is the primary source of municipal water for Big Spring, Odessa, Snyder, Midland, Robert Lee, Stanton, and San Angelo.

The District, as the governmental entity responsible for the regulation and maintenance of the Colorado and its tributaries in an area including both Lake Spence and the

---

1. The District's Board of Directors when the present dispute arose were John L. Taylor, Clyde McMahon, Sr., John Currie, R.S. Yorgesen, Clyde Yarborough, Charles R. Perry, Jim Bill Little, R.S. Searls, Jr., Richard D. Gillham, David Holt, John A. Fagin, and Rod Waller.

seven named communities, became concerned that the chloride-saturated spillage would affect the purity and usefulness of those communities' water supplies. Consequently, the District attempted to decrease the infusion of chlorides into the water supply by releasing water from Lake Spence into the river below as the spillages from Natural Dam Lake occurred. These timed releases "drafted" most of the chlorides through the reservoir and reduced their contaminative effect on Lake Spence and the municipal water supplies.

Not having been notified of the releases or the resulting increase in the river's level of chlorides, Hale irrigated his crops with river water during the summer of 1988 as he had always done. After noticing leaf burn on some of the plants, Hale stopped irrigating until he could contact the Water Control Board office in San Angelo; when that office reported not having been notified of anything unusual about the water, he resumed his irrigation. All of Hale's plants with leaf burn died shortly thereafter, and he discontinued his irrigation altogether. The balance of the peanut crop died from lack of water.

Hale filed this suit to recover damages for the loss of his peanut crop, the loss of a hay crop he would have reaped from the peanut vines had the plants grown to maturity, and the damage to some farm equipment caused by its contact with the river water.

As the movants for summary judgment, appellees had the burden of showing that no genuine issue of material fact remained with respect to the taking claim and that, consequently, they were entitled to judgment as a matter of law. In reviewing this summary judgment, we must indulge every reasonable inference benefitting Hale and resolve any doubts in his favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## THE DIRECTORS' AUTHORITY

The District's directors are public officials; as such, they enjoy a qualified immunity from suits based on actions within the scope of their authority. *See, e.g.,*

*Murphy v. Galveston County*, 788 S.W.2d 938, 939 (Tex.App.1990, writ denied); *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 110 (Tex.App.1987, writ ref'd n.r.e.); *Bagg v. University of Texas Medical Branch*, 726 S.W.2d 582, 585 (Tex.App.1987, writ ref'd n.r.e.). We must reverse the summary judgment favoring the directors only if the trial court erred in concluding that, as a matter of law, the order of releases was within the scope of the directors' authority.

> The District is authorized to provide for the study, correction, prevention and control of both artificial and natural pollution of the Colorado River ... and to adopt and promulgate all reasonable regulations with regard to such pollution, both artificial and natural, so as to secure, maintain and preserve the purity, usefulness and sanitary condition of the water in ... the Colorado River and its tributaries.

1961 Tex.Gen.Laws, 1st C.S., ch. 4, § 1, at 17. The District is also authorized, within the area of the river basin of this segment of the Colorado River, to "exercise all powers granted to a district or a river authority operating under Article XVI, Section 59, of the Texas Constitution by the Clean Air Financing Act, the Regional Waste Disposal Act, and any other general law relating to those specific powers and facilities." 1981 Tex.Gen.Laws, ch. 621, § 2 at 2430.

The District is also directed to "eliminate oil field brine pollution of the Colorado River and its tributaries." 1961 Tex.Gen.Laws, 1st C.S., ch. 4, § 28(b), at 17. Hale asserts that this provision limits the directors' authority; he reasons that ordering controlled releases of chloride-bearing water violates the directors' affirmative duty to eliminate oil-field-brine pollution. We disagree. The summary judgment evidence showed that natural events caused the rise in the level of chlorides in Lake Spence. The record reveals no factual dispute regarding the origin of the chlorides drafted through Lake Spence: excessive rain, not oil production, caused the chloride saturation. We conclude that the quoted provision does not limit the di-

rectors' authority in the present circumstances.

The release scheme implemented by the District was designed to protect the municipal water supplies of seven communities dependent on the reservoir for their water. The clear and undisputed evidence shows that the releases were part of an effort to secure and maintain the "purity, usefulness and sanitary condition of the water" in Lake Spence. Even indulging every reasonable inference in favor of Hale and resolving all doubts in his favor, we are convinced that, as a matter of law, the directors acted within the scope of their authority in implementing the release scheme. Accordingly, they enjoy qualified immunity from suits based on the releases. We overrule point of error one.

### THE TAKING

In his second point of error, Hale argues that the trial court erred in granting the appellees' motion for summary judgment on his constitutional-taking claim. Hale asserts that the District's release of chloride-laden water from Lake Spence deprived him of his recognized riparian right to divert and use water from the Colorado for irrigation purposes, thereby constituting a taking within the meaning of Article I, § 17 of the Texas Constitution: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...." This cause of action is in the nature of an inverse condemnation claim.

Although the State may take, damage, or destroy private property for public use, it must compensate the owner for its taking of, or interference with, the property. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941). The manner in which the State interferes with the property does not affect the owner's right to compensation, *id.*, and compensable takings may result from burdensome governmental restrictions on property use. *San Antonio River Auth. v. Garrett Brothers*, 528 S.W.2d 266, 273 (Tex.Civ.App.1975, writ ref'd n.r.e.). A person's property may be "taken, damaged or destroyed," so as to invoke the constitutional requirement of compensation, by injury resulting not only from the construction of public works, but also from their subsequent maintenance and operation. *Hidalgo County Water Improvement Dist. No. 2 v. Holderbaum*, 11 S.W.2d 506, 507 (Tex.Comm'n App.1928, judgm't adopted). Even a temporary taking of a vested right must be compensated. *San Antonio River Auth.*, 528 S.W.2d at 274.

Hale has, as appellees acknowledge, a permit from the Texas Water Commission granting him a riparian right to "divert and use not to exceed 100 acre-feet of water per year from ... the Colorado River ... for the irrigation of 100 acres of land within ... Mills County." A landowner's riparian right to draw water from an adjoining river for irrigation purposes is a vested property right and, under Article I, § 17, cannot be taken from the owner by condemnation without payment of just compensation. *Greenman v. City of Fort Worth*, 308 S.W.2d 553, 555–56 (Tex.Civ. App.1957, writ ref'd n.r.e.). Such a right is vested whether it derives from the common law doctrine of riparian rights or from an appropriation right (i.e., one granted by legislative enactment or permit). *In re Adjudication of the Water Rights of Upper Guadalupe Segment of Guadalupe River Basin*, 642 S.W.2d 438, 444–45 (Tex.1982); *Texas Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 647 (Tex.1971).

The essence of Hale's argument in the present case is that the District's series of releases of chloride-saturated water into the river destroyed, at least temporarily, his right to irrigate and so amounted to a constitutional taking of the right by the District.

In its motion for summary judgment, the District asserted two grounds for summary judgment on Hale's constitutional-taking claim: (1) that Hale's right to use water from the river for irrigation purposes did not include a right to any particular *quality* of water; and (2) that Hale's cause of action was essentially one for negligence,

and so did not constitute an inverse condemnation claim at all.

■ With respect to the District's first argument, Texas courts have consistently held that a landowner's riparian rights may involve not only the quantity of a stream's flow, but also the quality. The leading case is *Bigham Bros. v. Port Arthur Canal & Dock Co.,* 100 Tex. 192, 97 S.W. 686 (1906), where the plaintiffs grew rice on property adjacent to a navigable fresh-water bayou approximately 29 miles inland from the Gulf of Mexico. After the defendant (a corporation with eminent-domain powers) dug a canal to improve navigability, salt water from the gulf began to ascend to the plaintiffs' property and destroyed their rice crop. The supreme court reversed the lower courts' dismissal of the plaintiffs' claim and held that they had stated a cause of action:

> The following clause of article 1, § 17, of the Constitution of this state prescribes the rule by which the rights and liabilities of the parties to this suit must be determined: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." The right of a riparian owner to take water from the stream is property, and comes within the protection of the Constitution as above quoted.... The plaintiffs, as riparian owners, had the right to take from the bayou water with which to irrigate their rice farm, *and in that right was also included the right to have that water in its natural condition, at least that nothing should be introduced into it which would be injurious to its quality for irrigation purposes.*

97 S.W. at 688 (emphasis added).

Other Texas courts have reached the same result. *See Benjamin v. Gulf, C. & S.F. Ry.,* 49 Tex.Civ.App. 473, 108 S.W. 408, 410 (1908, writ ref'd) (pollution of stream by oil leaking from railroad company's tanks) ("The rule is that 'riparian owners have, also, a natural right to have streams flow unimpaired in quality as well as quantity....'"—quoting from Gould on Waters § 219); *Biggs v. Lee,* 147 S.W. 709, 711 (Tex.Civ.App.1912, writ dism'd) (upstream user diverted so much water that downstream flow became too heavily charged with minerals to be usable) ("The riparian owner in this case is entitled to sufficient water for his land's purposes. This necessarily means sufficient usable water...."); *Houston Transp. Co. v. San Jacinto Rice Co.,* 163 S.W. 1023, 1027–28 (Tex.Civ.App.1914, no writ) (removal of sand bar threatened to allow salt water from gulf to ascend to plaintiff's property) (riparian owner has a right "to the use and enjoyment of the flow of a stream of pure and wholesome water free from pollution"); *Garland Grain Co. v. D–C Home Owners Improvement Ass'n,* 393 S.W.2d 635, 640 (Tex.Civ.App.1965, writ ref'd n.r.e.) (stream polluted by manure from cattle fed by feed lot company) (riparian owner "has the right to enjoy the stream of water which flows through his land in its natural state, without diminution to its flow, quantity or purity.").

The foregoing statements also seem to represent the law in other jurisdictions, as indicated by the following declaration from an early treatise on the subject:

> A prior appropriator of the water of a stream for irrigation is entitled not only to the quantity of water covered by his appropriation, but also to have the same continue to flow without being so polluted or contaminated by the discharge of refuse and other matter therein as to render it unfit for use for purposes of irrigation. And he may maintain an action to recover damages for such pollution, or to restrain its continuance. What deterioration in quality would injuriously affect the water for irrigation, and whether or not the deterioration complained of in a particular case had this effect, are matters of fact for the consideration of the jury.

J. Long, *Law of Irrigation* § 275, at 473–74 (2nd ed. 1916) (citations omitted).

■ We conclude that the rights of a riparian landowner who has irrigation authority include the right "that nothing should be introduced into [the water] which would be injurious to its quality for irrigation purposes." *Bigham Bros.,* 97 S.W. at

688. Accordingly, we reject the District's first asserted basis for summary judgment. We note that the District made no attempt to obtain summary judgment on the ground that its timed releases from Lake Spence did not constitute the "introduction" of injurious material into the river, or that the releases were not the cause of the damage to Hale's peanut crop. Accordingly, those issues are not before us. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979).

■ The second ground on which the District sought summary judgment was that Hale's claim is actually one for negligence, not a constitutional taking. The District asserts that *Dallas County Flood Control Dist. v. Benson*, 157 Tex. 617, 306 S.W.2d 350 (1957), is controlling. We disagree. In *Benson*, employees of a flood control district conducted spraying operations to kill weeds in a floodway. The spray allegedly drifted onto and destroyed a portion of the plaintiff's cotton crop some three miles away. The plaintiff brought suit for damages. The trial court granted the defendants' motions for summary judgment. The court of civil appeals, however, reversed that judgment as to the district on the theory that the actions of its employees constituted the taking or damaging of the plaintiff's property for a public use within the meaning of Article I, § 17 of the constitution. The supreme court reversed the court of civil appeals and affirmed the trial court, holding that the undisputed facts did not amount to a taking. In so holding, the supreme court relied on the standard established in an earlier case in which Highway Department employees burning grass on the shoulder of a highway had let the fire spread to adjoining private property:

> Under the facts of this case, the cause of action is simply one sounding in tort.... *The damage occasioned by the fire was not necessarily an incident to, or necessarily a consequential result of, the act of the employees in clearing the grass from the highway. The spreading of the fire onto the premises of Weber was purely and solely the result of negligence; in no conceivable way can it be said that the hay crop was taken or damaged for public use.*

*Benson*, 306 S.W.2d at 351 (quoting from *Texas Highway Dep't v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 71 (1949)) (emphasis in original).

Applying the foregoing standard to the facts of the present case, the District has not demonstrated conclusively that the damage to Hale's peanut crop was simply the result of negligence. Indeed, the present record contains evidence that the District's directors may have made a conscious decision to increase the salinity of the river downstream from Lake Spence in order to keep the salinity in the lake itself at an acceptable level. Under these circumstances, *Benson* and *Weber* do not preclude Hale's action for a constitutional taking. We therefore reject the District's second asserted basis for the summary judgment.

We conclude that, as to the issues raised by the District in its motion for summary judgment, the summary judgment evidence does not show the absence of any genuine issue of material fact or that the District is entitled to judgment as a matter of law.

We affirm the portion of the trial court's judgment denying recovery against the District's individual directors; we reverse the portion of the judgment denying recovery on Hale's inverse condemnation claim, and we remand that cause of action to the trial court for further proceedings.